ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **SUCESIÓN VICENTE ORTIZ COLÓN Y CARLOS ANTONIO ORTIZ ABRAMS** <br> DEMANDANTE(S)-APELANTE(S) <br><br> V. <br><br> **UNIÓN INDEPENDIENTE AUTÉNTICA DE EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS** <br> DEMANDADA(S)-APELADA(S) | **KLAN202400234** | *APELACIÓN* <br> procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** <br><br> Caso Núm. <br> **SJ2019CV07636 (504)** <br><br> Sobre: <br> Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 31 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, la **SUCESIÓN VICENTE ORTIZ COLÓN Y CARLOS ANTONIO ORTIZ ABRAMS** (**SUCESIÓN** y señor **ORTIZ ABRAMS**) mediante *Recurso de Apelación* incoado el 8 de marzo de 2024. En su escrito, nos solicitan que revisemos la *Sentencia* emitida el 7 de noviembre de 2023 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] En la susodicha *Sentencia*, el foro *a quo* declaró ha lugar la *Moción de Sentencia Sumaria* presentada el 27 de abril de 2023 por la **UNIÓN INDEPENDIENTE AUTÉNTICA DE EMPLEADOS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS** (**UIA**); no ha lugar la *Moción Conjunta de Sentencia Sumaria* presentada el 20 de mayo de 2023 por la **SUCESIÓN** y señor **ORTIZ ABRAMS;** y decretó la desestimación, *con perjuicio,* de la reclamación.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 7 de noviembre de 2023. Apéndice del *Recurso de Apelación*, págs. 317-331.

Número Identificador:  SEN2026_____

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

El 24 de julio de 2003, el Comité de Querellas **UIA-AAA,** por conducto del Árbitro Abner Limardo (árbitro Limardo), dictaminó *Resolución*, concerniente a las *Querellas* presentadas el 28 de abril de 1994 y el 29 de junio de 2001, por la **Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (UIA)** y consolidadas con las *Querellas* Número CQ-94-141 del señor Noel Burgos Allende y CQ-01-394 del señor Esteban Alvarado Santiago y otros concerniente a un aumento salarial.[2]

En su *Resolución*, el árbitro Limardo declaró con lugar las antedichas *Querellas* y, en consecuencia, ordenó a la **Autoridad de Acueductos y Alcantarillados (AAA)** a que:

a. extienda el aumento salarial de $0.31 la hora al salario básico de todos los querellantes de la querella CQ-94-141, con efectividad retroactiva al 2 de julio [de 1986] en cumplimiento del acuerdo del 30 de mayo [de 1986] y asímismo extienda el aumento salarial de $0.31 la hora al salario básico de todos los querellantes de la querella CQ-01-394, con efectividad retroactiva al 29 de junio [de 1998] en cumplimiento de la Estipulación del 23 de junio [de] 2000;

b. realice el ajuste económico correspondiente por efecto del aumento salarial indicado en los años que el mismo cubre, sobre las partidas de bonos, licencias de vacaciones y enfermedad y cualquier otro beneficio marginal de todos los querellantes de ambas querellas del epígrafe;

c. pague a todos los querellantes de ambas querellas, en carácter de penalidad, una suma igual a la que resulte por el aumento salarial y ajuste económico aquí ordenado;

d. **pague a todos los querellantes de ambas querellas el 20% por concepto de honorarios de abogado sobre la totalidad que resulte del pago aquí ordenado más los gastos de este proceso y el interés legal, computado desde la radicación de las querellas y hasta el completo pago**;[3]

e. pague a todos los querellantes de ambas querellas no más tarde de la fecha en que a tenor con el Convenio Colectivo en vigor actualmente esta resolución advenga firme y ejecutoria, todas las sumas resultantes de todos los conceptos anteriores, a saber, del aumento salarial; el ajuste económico sobre los bonos, licencias de vacaciones y enfermedad y cualquier otro beneficio análogo; la penalidad y los honorarios de abogados, gastos e intereses.

---

[2] Esta fue notificada el 14 de agosto de 2003. Apéndice del *Recurso de Apelación*, págs. 2-7.
[3] (énfasis nuestro).

Dada las circunstancias, el 29 de agosto de 2014, se dictaron *Órdenes* disponiendo en lo pertinente "... II. [...] Ha Lugar al retiro de Fondo, expídase el cheque a nombre de la Unión en favor de los licenciados **CARLOS ORTIZ ABRAMS** y la **SUC. DE VICENTE ORTIZ COLÓN**. Si hay controversia en la distribución de honorarios entre el licenciado **ORTIZ ABRAMS** y la **SUC. DE VICENTE ORTIZ COLÓN**, la Unión deberá consignar mediante pleito independiente".[4]

El 22 de septiembre de 2014, el señor **ORTIZ ABRAMS** presentó *Moción de Reconsideración Parcial*.[5] En su escrito, pidió que los honorarios de abogado consignados, por la cantidad de $74,657.79, le fueran pagados directamente a la orden, y a favor de la **SUCESIÓN** y el señor **ORTIZ ABRAMS**. Al poco tiempo, el 20 de octubre de 2014, se dispuso *Orden* declarando no ha lugar a la petitoria de reconsideración.[6] El 24 de noviembre de 2014, el señor **ORTIZ ABRAMS** interpeló su revisión y revocación mediante *Recurso de Certiorari* (caso número **KLCE201401576**). Seguidamente, el 24 de febrero de 2015, se decidió *Resolución* en la cual se denegó la expedición del recurso de *certiorari*.[7]

Tiempo después, el 8 de enero de 2016, la **UIA** presentó *Moción Solicitando se Libere Consignación de Fondos*. A los pocos días, el 26 de enero de 2016, la **AAA** replicó mediante *Moción en Cumplimiento de Orden*. Así las cosas, se pautó una audiencia para el 10 de marzo de 2016 y luego de escuchar las partes, el 9 de agosto de 2016, se prescribió *Orden* requiriéndole a la Unidad de Cuentas liberar los fondos consignados.[8] En la aludida *Orden*, entre otros, se instruyó a la Unidad de Cuentas, Sala Superior de San Juan, a desembolsar a la **UIA** la totalidad de los honorarios de abogados consignados que totalizaban $74,657.79.

---

[4] Las mismas fueron archivadas y notificadas el 8 de septiembre de 2014, en el caso entre la **UIA** v. **AAA**, Civil Número K AC2009-0365 (503). Apéndice del *Recurso de Apelación*, págs. 8-11.
[5] *Íd.*, págs. 12-16.
[6] Apéndice del *Recurso de Apelación*, pág. 17.
[7] *Íd.*, págs. 18-37
[8] *Íd.*, págs. 40-43.

Más adelante, en septiembre de 2016, la SUCESIÓN y el señor ORTIZ ABRAMS presentaron *Moción Urgente de Reconsideración Conjunta*.[9] El 20 de septiembre de 2016, se expidió *Orden* declarando no ha lugar el petitorio de reconsideración y apercibiendo a los comparecientes de la imposición de honorarios por temeridad, de continuar insistiendo en un reclamo que ha sido reiteradamente denegado por el foro de instancia y/o por el foro apelativo.[10] Luego de varios trámites procesales, el 16 de diciembre de 2016, en el caso **KLCE201601982**, el Tribunal de Apelaciones decretó *Sentencia* dejando sin efecto su orden de paralización y *desestimando* el recurso por falta de jurisdicción en conformidad con la Regla 83 (B) y (C) de su Reglamento.[11]

A continuación, el 20 de julio de 2019, la SUCESIÓN y el señor ORTIZ ABRAMS instaron una *Demanda* sobre cobro de dinero.[12]

Pasado algún tiempo, el 27 de abril de 2023, la **UIA** presentó *Moción de Sentencia Sumaria*.[13] El 20 de mayo de 2023, la SUCESIÓN y el señor ORTIZ ABRAMS presentaron una *Moción Conjunta de Sentencia Sumaria*.[14] Al día

---

[9] Apéndice del *Recurso de Apelación*, págs. 44- 46.

[10] *Íd.*, págs. 47-48.

[11] Apéndice del *Recurso de Apelación*, págs. 49-54.

[12] *Íd.*, págs. 55-63. En la misma, se expuso: "Evaluamos los argumentos de las partes, junto a los documentos que obran [en] el expediente, y corroboramos que nuestro foro, atendió la controversia relacionada a la orden autorizando el pago de honorarios a nombre de la UIA y declinó expedir el recurso. De esa determinación se acudió en *certiorari* al Tribunal Supremo y el foro también, denegó el recurso, por lo que nada queda por disponer sobre la controversia del pago de honorarios a la UIA. Además, la UIA nos informó que ya recibí el pago de honorarios según ordenado, previo a nuestra orden de paralización".

[13] *Íd.*, págs. 64-172. Como parte de su *Moción de Sentencia Sumaria,* la **UIA** anejó lo siguientes documentos: Anejo I: Contrato de la UIA con el señor ORTIZ ABRAMS (noviembre de 2000); Anejo II: Contrato de la UIA con el señor ORTIZ ABRAMS (abril de 2007); Anejo III: Contrato de la UIA con el señor ORTIZ ABRAMS (junio de 2011); Anejo IV: Carta de terminación del contrato del señor ORTIZ ABRAMS (3 abril 2014); Anejo V: Contrato de la UIA con el señor ORTIZ COLÓN (mayo de 1980); Anejo VI: Contrato de la UIA con el señor ORTIZ COLÓN (agosto de 1987); Anejo VII: Artículo IX del Convenio Colectivo **UIA-AAA** (1998–2003); Anejo VIII: Laudo de arbitraje (julio de 2003); Anejo IX: Correo electrónico y proyecto de sentencia (enero 2013); Anejo X: Sentencia Parcial del caso: K AC2009–0365 (marzo 2013); Anejo XI: Sentencia Final del caso: K AC2009–0365 (septiembre 2013); Anejo XII: Resolución Tribunal de Apelaciones KLCE201401576 (24 febrero 2015); Anejo XIII: Órdenes del TPI (agosto 2014); Anejo XIV: Orden del TPI (agosto 2016); Anejo XV: Moción Urgente de Reconsideración Conjunta (septiembre 2016); Anejo XVI: Orden del TPI (septiembre 2016); y Anejo XVII: Sentencia del Tribunal de Apelaciones KLCE201601982 (diciembre 2016).

[14] Apéndice del *Recurso de Apelación*, págs. 173-288. La *Moción Conjunta de Sentencia Sumaria* está acompañada de: Anejo I: Resolución de Querellas (julio 2003); Anejo II: Órdenes del TPI (agosto 2014); Anejo III: Moción de Reconsideración Parcial (septiembre 2022); Anejo IV: Notificación (octubre 2014); Anejo V: Recurso de *Certiorari* (noviembre 2014); Anejo VI: Resolución Tribunal de Apelaciones KLCE201401576 (24 febrero 2015); Anejo VII: Recurso de *Certiorari* (mayo 2015); Anejo VIII: Resolución Tribunal de Apelaciones KLCE201500372 (5 junio 2015); Anejo IX: Orden del TPI (agosto 2016); Anejo X: Moción

siguiente, la **SUCESIÓN** y el señor **ORTIZ ABRAMS** presentaron su *Oposición Conjunta a Moción de Sentencia Sumaria de UIA*.[15] En breve, el 12 de junio de 2023, la **UIA** presentó su *Oposición a que se Dicte Sentencia Sumaria a Favor de la Parte Demandante*.[16]

Después, el 7 de noviembre de 2023, el tribunal primario concretó la *Sentencia* apelada. En la misma, formuló las siguientes treinta y seis (36) determinaciones de hechos:[17]

1. La parte demandada es un sindicato de empleados públicos que trabajan en la AAA, organizado al amparo de las disposiciones de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la Ley de Relaciones del Trabajo de Puerto Rico (29 LPRA sec. 62, et seq.).

2. Ortiz–Colón suscribió con la UIA contratos de servicios profesionales el 15 de mayo de 1980 y el 1 de agosto de 1987.

3. Ortiz–Colón fue asesor legal de la UIA desde el 15 de mayo de 1980 hasta la fecha de su fallecimiento, el 22 de febrero de 2014.

4. En el Contrato de Servicios Profesionales suscrito el 15 de mayo de 1980, Ortiz–Colón se comprometió a brindarle a la UIA "servicios legales especializados en el campo de las relaciones [obrero–patronales] que comprenden: consejo, asesoramiento, representación legal, [...] comparecencias ante los Tribunales de Justicia, [...] Comité de Quejas y Agravios y representación en todos los casos normales y corrientes que se susciten en dichos organismos y en los cuales tenga interés directo la [UIA] y sus afiliadas".

5. En el Contrato de Servicios Profesionales suscrito el 15 de mayo de 1980, la UIA se comprometió a proveerle a Ortiz–Colón "la suma de seiscientos ($600.00) dólares mensuales" en remuneración por sus servicios.

6. En el Contrato de Servicios Profesionales suscrito el 1 de agosto de 1987, Ortiz–Colón se comprometió a brindarle a la UIA "servicios legales especializados en el campo de las relaciones obrero–patronales que comprenden: el consejo, asesoramiento, representación legal, [...] comparecencias ante [...] el Comité de Querellas" y "[r]epresentación legal en los foros administrativos cuasi judiciales en casos de naturaleza obrero patronal que se susciten y en los cuales tenga intereses la [UIA]".

7. En el Contrato de Servicios Profesionales suscrito el 15 de mayo de 1980, la UIA se comprometió a proveerle a Ortiz–Colón "la suma de Mil dólares ($1,000.00) mensuales" en remuneración por sus servicios.

8. Ortiz–Abrams fue asesor legal de la UIA desde el 1 de noviembre de 2000 y concluyó el 3 de abril de 2014.

---

Urgente de Reconsideración Conjunta (septiembre 2016); Anejo XI: Notificación (septiembre 2016); Anejo XII: Notificación (septiembre 2016); Anejo XIII: Recurso de *Certiorari* (octubre 2016); y Anejo XIV: Sentencia del Tribunal de Apelaciones KLCE201601982 (diciembre 2016).

[15] Apéndice del *Recurso de Apelación*, págs. 289-300. Con la *Oposición Conjunta a Moción de Sentencia Sumaria* no presentó documento alguno.

[16] Apéndice del *Recurso de Apelación*, págs. 301-316. La *Oposición a que se Dicte Sentencia Sumaria a Favor de la Parte Demandante* tiene unida dos (2) documentos adicionales, a saber: Anejo I: Declaración Jurada de Luis A. De Jesús Rivera – presidente de la UIA (junio 2023); y Anejo II: Carta de Pedro Irene Maymí – presidente de la UIA (diciembre 2014).

[17] Apéndice del *Recurso de Apelación*, págs. 320–324.

9. Ortiz–Abrams suscribió con la UIA contratos de servicios profesionales el 1 de noviembre de 2000, el 1 de abril de 2007, y el 30 de junio de 2011.

10. En el Contrato de Servicios Profesionales suscrito el 1 de noviembre de 2000, Ortiz–Abrams se comprometió a brindarle a la UIA "servicios legales especializados en el campo de las relaciones obrero–patronales, civiles y penales que comprenden: el consejo, asesoramiento, representación legal, [...] comparecencias ante los Tribunales de Justicia, [...] y ante el Comité de Querellas" y "[r]epresentacion legal en los foros administrativos cuasi judiciales y judiciales en casos de naturaleza obrero–patronal, civil o penal que se susciten y en los cuales tenga intereses la [UIA]".

11. En el Contrato de Servicios Profesionales suscrito el 1 de noviembre de 2000, la UIA se comprometió a proveerle a Ortiz-Abrams "las facilidades y equipo de oficina, teléfono, agua, luz y sistema de computadora con la programación necesaria y una iguala mensual de $2,000.00" en remuneración por sus servicios.

12. En el Contrato de Servicios Profesionales suscrito el 1 de abril de 2007, Ortiz-Abrams se comprometió a brindarle a la UIA "servicios legales especializados en el campo de las relaciones obrero-patronales, civiles y penales que comprenden: el consejo, asesoramiento, representación legal, [...] comparecencias ante los Tribunales de Justicia, y [...] ante el Comité de Querellas" y "[r]epresentación legal en los foros administrativos cuasi judiciales y judiciales en casos de naturaleza obrero-patronal, civil o penal que se susciten y en los cuales tenga intereses la [UIA]".

13. En el Contrato de Servicios Profesionales, suscrito el 1 de abril de 2007, la UIA se comprometió a proveerle a Ortiz-Abrams "las facilidades y equipo de oficina, teléfono, agua, luz y sistema de computadora, con la programación necesaria y una iguala mensual de dos mil dólares ($2,000.00)" en remuneración por sus servicios.

14. En el Contrato de Servicios Profesionales suscrito el 30 de junio de 2011, Ortiz-Abrams se comprometió a brindarle a la UIA "servicios legales especializados en el campo de las relaciones obrero-patronales y civiles que comprenden: el consejo, el asesoramiento, la representación legal, [...] comparecencias ante los Tribunales de Justicia, [...] y ante el Comité de Querellas" y "[r]epresentación legal en los foros administrativos cuasi judiciales y judiciales en casos de naturaleza obrero-patronal o civil que se susciten y en los cuales tenga intereses la [UIA]".

15. En el Contrato de Servicios Profesionales suscrito el 30 de junio de 2011, la UIA se comprometió a proveerle a Ortiz-Abrams "las facilidades y equipo de oficina, teléfono, agua, luz y sistema de computadora, con la programación necesaria y una iguala mensual de dos mil quinientos dólares ($2,500.00)" en remuneración por sus servicios.

16. Como asesores legales y contratistas de la UIA, Ortiz-Colón y Ortiz-Abrams representaron a los querellantes — UIA, Noel Burgos Allende, Esteban Alvarado Santiago y otros en circunstancias similares —en dos querellas salariales consolidadas (CQ-94-141 y CQ-01-394) de un grupo de sus afiliados en un procedimiento de arbitraje privado establecido por Convenio Colectivo.

17. El 24 de julio de 2003, el Árbitro Abner Limardo (Árbitro Limardo) del Comité de Querellas UIA-AAA emitió una Resolución notificada el 14 de agosto de 2003, en las Querellas

presentadas por la UIA ante ese Foro arbitral el 28 de abril de 1994 y el 29 de junio de 2001, respectivamente, y consolidadas Números CQ-94-141 (Noel Burgos Allende y otros) y CQ-01-394 (UIA, Esteban Alvarado Santiago, y otros en circunstancias similares), sobre: reclamación aumento salarial.

18. En su laudo, el Árbitro Limardo declaró Con Lugar a las mencionadas Querellas consolidadas y en su consecuencia y pertinente en este caso, ordenó a la querellada AAA: "Pague a todos los querellantes de ambas querellas el 20% por concepto de honorarios de abogado sobre la totalidad que resulte del pago aquí ordenado más los gastos de este proceso y el interés legal, computado desde la radicación de las querellas y hasta el completo pago".

19. Posteriormente, en el caso *UIA v. AAA*, Civil Núm. K AC2009-0365 (503), el 29 de enero de 2013, Ortiz-Abrams y Ortiz-Colón enviaron por correo electrónico al tribunal un proyecto de sentencia.

20. El referido proyecto de sentencia provee lo siguiente en cuanto a la otorgación de los honorarios de abogado:

> En consideración a todo lo anteriormente expuesto, este Tribunal ordena a la AAA que dentro del término perentorio de quince (15) días, sin mayor excusa o dilación, pague a los siguientes 100 reclamantes, miembros de la UIA, ordenado por el LAUDO a [Ortiz–Colón] y [Colón–Abrams], más los intereses legales, como dispone el laudo[.]

21. El 26 de marzo de 2013, el Tribunal de Primera Instancia (TPI) dictó *Sentencia [P]arcial* a favor de la UIA expresando lo siguiente:

> En consideración a todo lo anteriormente expuesto, este Tribunal declara Ha lugar la Demanda de forma parcial y en consecuencia ordena a la AAA que dentro del término perentorio de quince (15) días sin mayor excusa o dilación, pague a los siguientes 100 reclamantes, miembros de la UIA, lo ordenado por el LAUDO, así como que pague los honorarios ordenados por el LAUDO a [Ortiz–Colón] y [Ortiz–Abrams], más los intereses legales, como dispone el LAUDO[.]

22. El 27 de septiembre de 2013, el TPI dictó *Sentencia* a favor de la UIA expresando:

> Por los fundamentos antes indicados, se declara Ha Lugar la *Petición*, presentada el 7 de abril de 2009, por la querellante–peticionaria, [UIA]. En consecuencia, se ordena a la [AAA] a que dentro de término perentorio de 15 días, sin mayor excusa o dilación, pague a los 252 reclamantes, miembros de la UIA, lo ordenado por el Laudo, a [Ortiz–Colón] y [Ortiz–Abrams], más los intereses legales, según dispuesto en el proceso de arbitraje[.]

23. El 22 de febrero de 2014, Ortiz–Colón falleció.

24. El 8 de septiembre de 2014, el TPI notificó las órdenes del 29 de agosto de 2014.

25. Por medio de las referidas órdenes, el TPI:

> (A)    Acogió la moción de relevo de representación legal y de admisión como parte con interés de Ortiz–Abrams y tomó conocimiento de la oposición del patrono AAA;

(B)     Aceptó la objetada consignación efectuada por la AAA, en concepto de honorarios de abogado, por la suma de $74,657.79; y

(C)     Ordenó que esos fondos consignados para el pago de honorarios de abogado fueran pagados mediante cheque librado a la orden de UIA y a favor de Ortiz–Abrams y la Sucn. Ortiz–Colón, y de haber controversia sobre la distribución de honorarios, que la UIA consignara por medio de pleito independiente.

26. El 22 de septiembre de 2014, Ortiz–Abrams presentó una *Moción de Reconsideración parcial* ante el TPI por el cual, en lo pertinente, le solicitó al tribunal que le ordenara a la Unidad de Cuentas a expedir un cheque a la orden de Ortiz–Abrams por la cantidad de $74,657.79 en concepto de los honorarios consignados.

27. El 24 de octubre de 2014, el TPI notificó la orden del 20 de octubre de 2014 por la cual denegó la *Moción de reconsideración parcial*.

28. El 24 de noviembre de 2014, Ortiz–Abrams presentó *Recurso de certiorari* ante el Tribunal de Apelaciones (TA) en caso núm. KLCE201401576, solicitando la revisión de las órdenes del TPI del 29 de agosto de 2014, notificadas el 8 de septiembre de 2014.

29. El 24 de febrero de 2015, el TA emitió *Resolución* por la cual determinó que Ortiz–Abrams no tenía legitimación activa y que tampoco existían las condiciones para sustituir el criterio del TPI por el del TA.

30. El 11 de mayo de 2015, Ortiz–Abrams presentó un *Recurso de Certiorari* ante el Tribunal Supremo (TS), Caso Núm. CC–15–0372.

31. El 5 de junio de 2015, notificada el 10 de junio de 2015, el TS emitió *Resolución* declarando No Ha Lugar el *Recurso de certiorari* presentado por Ortiz–Abrams.

32. El 9 de agosto de 2016, el TPI dictó Orden instruyendo a la Unidad de Cuentas del Centro Judicial a desembolsarle a la UIA "la totalidad de los honorarios de abogados consignados y que totalizan $74,657.79".

33. El 12 de septiembre de 2016, Ortiz–Abrams y la Sucn. Ortiz–Colón presentaron una *Moción urgente de reconsideración conjunta* solicitándole al TPI que le ordenara a la Unidad de Cuentas a que expidiera un cheque a la orden de Ortiz–Abrams y la Sucn, Ortiz–Colón por la suma de $74,657.79.

34. El 20 de septiembre de 2016, notificada el 27 de septiembre de 2016, el TPI emitió *Orden* declarando No Ha Lugar la *Moción urgente de reconsideración conjunta* de Ortiz–Abrams y la Sucn. Ortiz–Colón y advirtiéndoles que se exponían a la imposición de honorarios por temeridad "de continuar insistiendo en un reclamo que ha sido reiteradamente denegado por el foro de instancia y/o por el foro apelativo".

35. El 21 de octubre de 2016, Ortiz–Abrams y la Sucn. Ortiz–Colón presentaron su *Recurso de certiorari* ante el TA, caso núm. KLCE201601982, solicitando la revisión de la *Orden* del TPI del 20 de septiembre de 2016, notificada el 27 de septiembre de 2016.

36. El 16 de diciembre de 2016, notificada el 23 de diciembre de 2016, el TA emitió *Sentencia* desestimando el recurso de *certiorari* presentado por la Ortiz–Abrams y la Sucn. Ortiz–Colón.

En desacuerdo, el 22 de noviembre de 2023, la **SUCESIÓN ORTIZ COLÓN** y el señor **ORTIZ ABRAMS** presentaron una *Moción Conjunta de Reconsideración*.[18] En otro momento, el 7 de febrero de 2024, el foro recurrido dictó la *Resolución* declarando no ha lugar a la súplica de reconsideración.[19]

Aun inconforme, el 8 de marzo de 2024, la **SUCESIÓN ORTIZ COLÓN** y el señor **ORTIZ ABRAMS** acudieron ante este foro revisor mediante *Recurso de Apelación* señalando el(los) siguiente(s) error(es):

> El Honorable Tribunal de Primera Instancia dictó una Sentencia Sumaria Final, la cual adolece del error craso y manifiesto de haber desestimado la Demanda, con perjuicio, pues ésta resultó contraria a la legislación laboral y a la doctrina jurisprudencial, las cuales regulan exclusivamente la concesión de los honorarios profesionales a los abogados de reclamantes, en acciones de arbitraje obrero-patronal.

El 12 de marzo de 2024, pronunciamos *Resolución* concediendo término de treinta (30) días para presentar su alegato en oposición a la **UIA**. El 12 de abril de 2024, la **UIA** presentó su *Alegato en Oposición*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *SENTENCIA SUMARIA*

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[20] Su propósito o finalidad es propiciar la solución justa, rápida y económica de aquellos litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[21]

---

[18] Apéndice del *Recurso de Apelación*, págs. 332-342.
[19] *Íd*., págs. 343-344.
[20] *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).
[21] *Negrón Castro y otros v. Soler Bernardini y otros*, 2025 TSPR 96, resuelto el 6 de octubre de 2025; *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024).

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[22] Esta prescribe que cualquiera de las partes podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".[23]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[24] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[25] De esta manera, la parte promovente debe desglosar los hechos en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[26] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits y hasta prueba oral".[27]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está

---

[22] 32 LPRA Ap. V, R. 36. *Negrón Castro y otros v. Soler Bernardini y otros, supra*; *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025.

[23] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. Hacienda y otros*, 212 DPR 335 (2023).

[24] *Cooperativa de Seguros Múltiples de Puerto Rico y otros v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025; *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).

[25] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

[26] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*. Antedicha Regla enuncia: (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

[27] *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. Ed., San Juan, LexisNexis, 2017, pág. 318. Regla 36.5 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36.5.

obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[28] Para ello debe cumplir con los mismos requisitos con que tiene que cumplir la parte promovente, pero, además, su solicitud debe contener:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.[29]

De no hacerlo, la parte opositora corre el riesgo de que la solicitud de *sentencia sumaria* sea acogida por el tribunal y se resuelva en su contra.[30] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[31] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[32]

---

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone: La **contestación a la moción de sentencia sumaria** deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.
[29] Regla 36.3(b)(1) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(b)(1).
[30] *Ramos Pérez v. Univisión, supra,* pág. 215.
[31] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018); *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 168 (2011); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).
[32] *Íd.*, págs. 215-216.

Al evaluar la procedencia de la solicitud de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de** *sentencia sumaria***, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[33] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[34] El tribunal **no** tiene que considerar los hechos que no están debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establezcan.[35] Así como, tampoco debe apreciar cualquier declaración jurada o cualquier otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos[36]. Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[37]

Es preciso subrayar que, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[38] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[39]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de

---

[33] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).
[34] *E.L.A. v. Cole*, 164 DPR 608, 626 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610-611 (2000).
[35] Regla 36.3(d) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(d). Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 433.
[36] *Íd.*
[37] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[38] *Ramos Pérez v. Univisión, supra*, pág. 214.
[39] *Íd.*

maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente; o (4) no proceda en cuestión de derecho.[40]

La Regla 36.4 de las de Procedimiento Civil de 2009, delimita las instancias en que el Tribunal de Primera Instancia está obligado a consignar en su dictamen los hechos materiales sobre los cuales no hay controversia, y cuáles hechos materiales halló controvertidos; a saber: (i) deniegue dictar *sentencia sumaria* sobre la totalidad del pleito; (ii) no conceda todo el remedio solicitado; o (iii) deniegue la moción de *sentencia sumaria*, tiene que consignar los hechos sobre los cuales no hay controversia[41]. Estas tres (3) instancias conllevan la celebración de una audiencia en su fondo. En estos casos, la consignación en la *sentencia sumaria* de los hechos materiales sobre los cuales no hay controversia sustancial hace innecesario presentar evidencia o prueba sobre estos durante el juicio.[42] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[43]

Aun así, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar denegatorias o concesiones de mociones de *sentencia sumaria*.[44] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento

---

[40] *Negrón Castro y otros v. Soler Bernardini y otros, supra*; *Ramos Pérez v. Univisión, supra*, pág. 217.
[41] 32 LPRA Ap. V, R. 36.4. *Pérez Vargas v. Office Depot,* 203 DPR 687, 697 (2019)
[42] *Íd.*
[43] 32 LPRA Ap. V, R. 36.3(e).
[44] *Birriel Colón v. Supermercado Los Colobos, supra*; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *Meléndez González v. M. Cuebas, Inc.,* 193 DPR 100, 118 (2015).

Civil de 2009 y su jurisprudencia interpretativa.[45] Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor.[46] Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[47]

En esencia, si el foro primario ***acogió*** la moción y dictó sentencia sumariamente, nos corresponderá revisar si en realidad existen hechos materiales en controversia.[48] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales encontramos que están en controversia y cuáles están incontrovertidos.[49] Puede hacerse en la decisión en la cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se determinó que los hechos materiales realmente están incontrovertidos, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho a la controversia.[50] En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina

---

[45] *Rosado Reyes v. Global Healthcare Group, LLC*, 205 DPR 796, 809 (2020); *Meléndez González v. M. Cuebas, Inc., supra*, pág. 118.
[46] *Birriel Colón v. Supermercado Los Colobos, supra*; *Rosado Reyes v. Global Healthcare, supra*; *Meléndez González v. M. Cuebas, Inc., supra*.
[47] *Birriel Colón v. Econo y otro, supra*.
[48] *Rivera Matos et al. v. Triple S et al., supra*.
[49] La mencionada Regla 36.4. sobre Pleito no decidido en virtud de moción decreta: Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.
[50] *Íd*., pág. 119. Véase, además, *Oriental Bank v. Caballero García, supra*.

de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[51]

### - B – *LEY NÚM. 402 DE 1950*

En lo pertinente a la presente controversia, la Ley Núm. 402 de 1950, erige como *política pública* proteger a los trabajadores y empleados contra las reducciones en el valor de su trabajo.[52] Especialmente, apremia regular la concesión de *honorarios de abogado* en los casos de reclamaciones de empleados contra sus patronos; declarar nulos los contratos de honorarios celebrados entre organizaciones obreras y sus abogados a base de un porcentaje de beneficios obtenidos mediante la negociación colectiva; y declarar mala práctica de la profesión de abogado la violación de la presente ley.[53]

Consecuentemente, la Asamblea Legislativa declaró que "el permitir el cobro de honorarios de abogados a los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo, equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados".[54]

El Artículo 2 del estatuto dispone explícitamente que:[55]

> En todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono el pago de honorarios de abogado, si este no fuera uno de los abogados del Departamento del Trabajo y Recursos Humanos.

Típicamente, **la imposición de honorarios al amparo de esta legislación procede cuando concurren las siguientes condiciones: (1)**

---

[51] *Negrón Castro y otros v. Soler Bernardini y otros, supra; Birriel Colón v. Econo y otro, supra; Meléndez González et al. v. M. Cuebas, supra*, págs. 114-116.

[52] Mejor conocida como la *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos*. 32 LPRA § 3114.

[53] Véase: Exposición de Motivos, Ley Núm. 402 de 1950.

[54] 32 LPRA § 3114.

[55] 32 LPRA § 3115.

**un empleado haga una reclamación a su empleador; (2) la reclamación surja al amparo de la legislación laboral; (3) el empleador sea un patrono bajo la ley; y (4) se conceda la reclamación.**[56]

### - C – *HONORARIOS DE ABOGADOS*

Entretanto, al enfocarnos en la concesión de honorarios de abogado, esto puede ser objeto de un **contrato de servicios profesionales**.[57] Por ejemplo, el contrato más común al respecto es el que otorga un abogado y su cliente para la representación legal de este último. Al analizar esa relación contractual, entran en juego ciertas disposiciones éticas que uniforman y crean unos límites legales a las cuantías susceptibles de ser colectadas por el jurista.[58] Es decir, la autonomía de la voluntad que rige las relaciones contractuales en nuestro ordenamiento, en el caso de los contratos de servicios legales, está adherida a consideraciones éticas que son íntimas a la profesión legal.[59] Cardinalmente, las fijadas en el Canon 24 de Ética Profesional.[60]

En ausencia de un contrato, el cómputo de la cuantía de honorarios de abogados susceptibles de ser cobrada puede ser calculada a base del criterio de *quantum meruit*. El precepto legal *quantum meruit* significa "tanto como se merece".[61] Esta máxima reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado.[62] En nuestro ordenamiento jurídico, la acción para reclamar el valor razonable de servicios a base de un *quantum meruit* emanaba del Art. 1473 del Código Civil de 1930, el cual disponía en parte que:

> En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieran diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de

---

[56] *Ortiz y otros v. Mun. de Lajas*, 153 DPR 744, 751 (2001). (énfasis nuestro).

[57] (énfasis nuestro).

[58] *Nasser Rizek v. Hernández*, 123 DPR 360, 370 (1989).

[59] *In re*: *Acevedo Álvarez*, 178 DPR 685, 690 (2010); Véase, además, el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24, vigente al momento de los hechos.

[60] 4 LPRA Ap. IX, C. 24.

[61] I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., San Juan, Ed. Lexis, 2000, pág. 395.

[62] *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 557 (1992).

la otra parte, ante cualquier corte con jurisdicción competente, el importe razonable de dichos servicios.[63]

De una lectura del referido Artículo, se puede deducir que proveía un remedio en restitución basado en elementos de justicia. Este procuraba evitar el *enriquecimiento injusto* de quien recibe un servicio permitiéndole al que lo presta la posibilidad de reclamar su valor razonable cuando no se hubiera pactado un precio cierto.[64]

Sobre ese particular, el Máximo Foro reveló, además, que, en este tipo de acción de cobro de dinero por servicios prestados, el peso de la prueba recae sobre el abogado. En virtud de ello, le corresponde al letrado presentar prueba, sea directa o circunstancial, sobre: (1) las gestiones profesionales que realizó para beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones; y (3) el valor razonable de las horas dedicadas.[65]

Una vez el foro primario evalúa la prueba, tiene el deber de fijar los honorarios a los que tenga derecho el reclamante y evaluar su razonabilidad tomando en consideración, entre otros, los factores enumerados en el Canon 24 del Código de Ética Profesional a saber:

> (1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;
> (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;
> (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;
> (4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;
> (5) la contingencia o certeza de la compensación, y
> (6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.[66]

---

[63] 31 LPRA § 4111 (Derogado). Cabe destacar que el Código Civil de Puerto Rico de 1930, estaba vigente al momento en que surgieron los hechos del presente caso, fue derogado y sustituido mediante la Ley Núm. 55-2020, conocida como Código Civil de Puerto Rico de 2020.

[64] *Cruz Pérez v. Roldan Rodríguez et al.*, 206 DPR 261, 272 (2021); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 413 (2018).

[65] *Íd.*

[66] 4 LPRA Ap. IX, C. 24.

**- III -**

La **SUCESIÓN ORTIZ COLÓN** y el señor **ORTIZ ABRAMS** arguyen que el foro de instancia erró al dictar una *Sentencia* que, a su juicio, adolece de error craso y manifiesto al desestimar, con perjuicio, su *Demanda* sobre cobro de dinero. En ese contexto, puntean que ese proceder es contrario a la legislación laboral y a la doctrina jurisprudencial, las cuales reglamentan exclusivamente la concesión de honorarios profesionales de los abogados en acciones de arbitraje obrero–patronal.

Además, sostuvieron que el tribunal primario había ordenado a la **AAA** a cumplir con la *Resolución* incluyendo lo relativo a los pagos de honorarios de los abogados más los intereses. Razonaron, además, que ya este Tribunal de Apelaciones, mediante el caso *KLCE201401576*, había reconocido que sí les corresponden los honorarios a los licenciados **ORTIZ COLÓN** y **ORTIZ ABRAMS**, según el ordenamiento laboral, pero que era necesario conducir la reclamación directamente a la **UIA**, mediante reclamo extrajudicial o en un pleito independiente. Concluyeron su escrito apelativo haciendo hincapié en que este foro revisor debe conceder los honorarios de los letrados **ORTIZ COLÓN** y **ORTIZ ABRAMS**, a razón de un 20% de la suma total adjudicada a los empleados querellantes en conformidad a la citada Ley Núm. 402 y su jurisprudencia interpretativa.

Al contrario, la **UIA** elucida que la *Sentencia* apelada fue dictada conforme a derecho y se aleja de cualquier error. Principalmente, aclara que la *Sentencia* se tramitó de forma sumaria luego de que el foro de instancia evaluara, con detenimiento, los argumentos y la prueba de las partes. En ese sentido, enfatiza que la **SUCESIÓN ORTIZ COLÓN** y el señor **ORTIZ ABRAMS** se limitaron a presentar argumentos puramente legales sin acompañar la prueba necesaria para rebatir cualquier evidencia presentada por la **UIA**. En lo concerniente al pago de los honorarios, la **UIA** propuso que la legislación laboral citada no regula exclusivamente la concesión de honorarios

profesionales a los abogados de los reclamantes, pues precisamente eso es lo que tipifica el Canon 24 de Ética Profesional. Además, pormenorizaron que los licenciados **ORTIZ COLÓN** y **ORTIZ ABRAMS** ostentaban contratos de servicios profesionales con la **UIA**, por lo que, la unión de trabajadores fue su cliente y estos no estuvieron privados de cobrar sus honorarios. Debido a que la **UIA** les pagaba por sus servicios profesionales mensualmente al palio de lo convenido entre las partes.

Ahora bien, al evaluar minuciosamente la totalidad del expediente comprendemos que es un hecho irrefutable que ambos abogados fungieron como asesores y representaciones legales de la **UIA**. En el caso del señor **ORTIZ COLÓN** (QEPD), convino un contrato por servicios profesionales en el 1980 que pactaba un pago de $600.00 mensuales.[67] Tal contrato se renovó y se extendió hasta prácticamente su fallecimiento en el 2014.

El señor **ORTIZ ABRAMS** pactó contratos por servicios profesionales desde el año 2000 y se extendieron hasta el 2011. Los aludidos acuerdos por servicios profesionales incluyeron: (i) facilidades y equipo de oficina; (ii) teléfono; (iii) agua y luz; (iv) sistema de computadora con programación; y (v) una iguala mensual de $2,000.00 en retribución por sus servicios.[68]

Como cuestión de umbral, toda vez que se acogió la *Moción de Sentencia Sumaria* presentada el 27 de abril de 2023 por **UIA** y el 7 de noviembre de 2023, se difundió la *Sentencia*, hemos revisado todas las determinaciones de hechos y acogemos las mismas por ser estas esenciales y pertinentes. Tal cual, percibimos que no hay controversia.

Precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y luego de justipreciar meticulosamente los respectivos escritos presentados, hallamos que: (i) la *Moción de Sentencia Sumaria* presentada el 27 de abril de 2023 por **UIA;** y (ii) la *Moción Conjunta de*

---

[67] Esta cuantía mensual aumentó en los contratos posteriores.
[68] Apéndice del *Recurso de Apelación*, págs. 81–89. Este estipendio cambió durante el transcurso del tiempo.

*Sentencia Sumaria* presentada el 20 de mayo de 2023 por la **Sucesión** y señor **Ortiz Abrams** cumplen a cabalidad con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009.

En vista de ello, es nuestro deber revisar si el foro de instancia aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la afirmativa. Dicho eso, procedemos a enfocarnos en la médula de la presente controversia y su único señalamiento de error. Ciertamente, la legislación laboral citada con frecuencia en el caso de marras persigue ordenar a los patronos el pago de los honorarios de los abogados de los empleados que prevalecen en una reclamación laboral.[69] Sustancialmente, se desprende que su propósito es renumerar la labor de los abogados quienes estuvieron privados de cobrarle honorarios a sus clientes, y a su vez, proteger al trabajador en la reivindicación de sus derechos laborales.

Es necesario que, en este caso, efectuemos una breve distinción. Por un lado, tenemos un escenario en donde la paga de honorarios a un abogado se libra por parte de un patrono perdidoso en su labor de defender los derechos de los empleados querellados al palio de la Ley Núm. 402. Otra situación, *muy distinta*, es ser **asesor y representación legal** de una unión de trabajadores, en este caso, la **UIA,** y a través del tiempo mantener una *relación contractual* que incluye un sueldo fijo mensual, por los servicios prestados independientemente exista o no un litigio pendiente, más otros beneficios.

Con esa distinción en perspectiva, no cabe duda de que la relación entre la **UIA** con **Ortiz Colón** y **Ortiz Abrams**, esencialmente, germinó de los contratos por servicios profesionales. Ello obligó por años a la **UIA** a pagarle a ambos jurisconsultos un salario mensual más beneficios. De los contratos no surge que tales beneficios fueran condicionados a lograr un **objetivo específico** o **determinado** como lo fue la otorgación del ajuste

---

[69] Ley Núm. 402 de 12 de mayo de 1950, según enmendada. 32 LPRA § 3114.

salarial a favor de los obreros de la **UIA** por parte de la **AAA**. Eso quiere decir, que los salarios devengados por los abogados, así como los beneficios otorgados a su favor por parte de la **UIA** fueron satisfechos.

No hallamos en el historial judicial que la **UIA** haya incumplido con lo consentido entre las partes. Tampoco encontramos evidencia de un acuerdo independiente a los contratos por servicios profesionales que proveyera el pago de honorarios por litigios resultantes de negociaciones colectivas.

Por consiguiente, es necesario resaltar que los honorarios de los letrados se rigieron por los contratos por servicios profesionales que mantuvieron con la **UIA** y no por las disposiciones de la Ley Núm. 402 de 1950. Con ello en justa perspectiva y al examinar *de novo*, las interioridades del expediente reiteramos que no existen hechos esenciales o materiales en controversia, por lo que, el foro primario no incidió.

- IV -

Por los fundamentos expuestos, ***confirmamos*** la *Sentencia* prescrita el 7 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado y hace constar las siguientes expresiones: "En atención a las particularidades que presenta el caso, entiendo se debió disponer del recurso con mayor celeridad".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones